UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

MICHAEL SOOKOO,

                    Petitioner,              09 Civ. 9820 (JGK)

        - against -                          MEMORANDUM OPINION AND
                                                      ORDER
PHILIP HEATH, Superintendent of Sing
Sing Correctional Facility,

                    Respondent.
────────────────────────────────

JOHN G. KOELTL, District Judge:

    Michael Sookoo brings this petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  The petitioner was

convicted in New York State Supreme Court, New York County, of

murder in the second degree in violation of New York Penal Law

section 125.25[1], and was sentenced on February 20, 2001, to a

prison term of twenty years to life.  The judgment of conviction

was affirmed on April 29, 2008, by the Appellate Division, First

Department, 856 N.Y.S.2d 105, 106 (App. Div. 2008), and leave to

appeal to the New York Court of Appeals was denied on July 30,

2008, 893 N.E.2d 454, 454 (N.Y. 2008).  The petitioner asserts

the following four claims in his habeas corpus petition: (1) The

judge failed to give an alibi instruction; (2) the judge failed

to give a "one witness identification charge;" (3) the admission

of testimony by the former Assistant District Attorney and the

police about prior consistent statements from witness William

Ross was error; and (4) the petitioner's trial counsel was ineffective.

                                I.

The events that led to the petitioner's conviction took place in 1990.  At that time, however, the detectives investigating the death of Kenny Hayes did not believe there was sufficient evidence to charge the petitioner with his murder. (Tr. 22.)  That changed in 1995 when William Ross, who lives in the building in front of which Hayes was killed, came forward as an eyewitness to the murder.  (Tr. 22, 50.)  Ross, a former low-level drug-dealer with an extensive criminal record, came to the police after he was nearly shot following a dispute that was unrelated to the petitioner's case.  (Tr. 23.)  Ross worked with the police on that case, testifying against those involved in the attempt on his life.  (Tr. 24.)  During that time, he formed a friendship with the Assistant District Attorney ("ADA") assigned to prosecute that case.  (Tr. 24.)  Unprompted, Ross came into the ADA's office one day and told him that he had witnessed the petitioner shoot Hayes in 1990.  (Tr. 25.)  Ross's description of the shooting led police to re-open the file on the death of Hayes, and to prosecute the petitioner for his murder.  (Tr. 30.)

At trial, the jury could reasonably have found the following facts.  The petitioner operated a social club in which

                                2

gambling took place and liquor and drugs were sold in the
basement of an apartment building located at 312 West 122nd
Street in Manhattan.  (Tr. 50, 53-54.)  The prosecution's
eyewitness, William Ross, lived on the second floor of the
apartment building in which the petitioner operated his club.
(Tr. 51.)  Ross indicated that in either November or December of
1989, a man named Kenny Hayes introduced himself as the new
superintendent of the building to the building's residents,
including Ross.  (Tr. 51-52).  Hayes told the building's
residents that he was the "new sheriff in town" and that he was
going to rectify "anything that was happening in the building
illegally."  (Tr. 52.)

     Ross testified that in early February 1990, he observed the
petitioner and Hayes speaking on the sidewalk in front of the
apartment building from the window of his second floor
apartment.  (Tr. 62-63.)  Ross testified that although he could
not hear the conversation, he knew its substance involved Hayes'
opposition to the club the petitioner was running.  (Tr. 64.)

     Ross next testified that he was looking out the open window
of his second floor apartment at around 8:45 p.m. on the night
of February 19, 1990, when he saw Hayes standing on the sidewalk
outside.  (Tr. 68-69.)  Then, he "saw Mike [Sookoo] step up the
stairs [from the basement club] and take some shots at Kenny."
(Tr. 69.)  Ross testified that he heard three or four shots and

3

that the petitioner fired from a distance of ten to twelve feet.
(Tr. 78.)  Hayes fell over and the petitioner went back down the
stairs to the club.  (Tr. 79.)  Ross then observed the
petitioner exit the club from a different staircase with five to
seven people.  (Tr. 92-93.)  The last he saw the petitioner that
night was as the petitioner turned the corner to the left of
Manhattan Avenue.  (Tr. 94.)  Ross stated that he did not call
the police because he "really didn't want to get involved."
(Tr. 103.)

James Harrell, a building administrator who oversaw
maintenance at 312 West 122nd Street, also testified at trial.
(Tr. 244.)  Harrell had hired Kenny Hayes as the superintendent
for the building.  (Tr. 246.)  Harrell was also aware that the
petitioner had taken over the operations for the social club run
out of the basement of the building; and Harrell testified that
he believed drugs were being sold out of the club.  (Tr. 249-
50.)  Hayes, the superintendent, had voiced concerns to Harrell
about the petitioner's operation of the club and its activities.
(Tr. 252.)  About a week before Hayes was killed, Harrell
visited the building and spoke with the petitioner.  (Tr. 253.)
The petitioner informed Harrell that he was now a partner in the
club with Willie Floyd, who had previously been its sole
operator, and that he wanted to pay off any rent that Floyd
owed.  (Tr. 254.)  Harrell told the petitioner that he would

only accept rent from Floyd.  (Tr. 254.)  At that point, several men came out of the club and "surrounded [Harrell] . . . with a threatening manner."  (Tr. 254.)  Harrell stated that he was "going to start legal proceedings to evict [the] club," and walked away.  (Tr. 254).

On the night of February 19, 1990, at around 8:30 p.m., Harrell testified that he received a phone call from one of the tenants in the apartment building next to 312 West 122nd Street indicating that there was a problem with the heat in the building.  (Tr. 257-58.)  Harrell called Hayes and told him to meet Harrell in front of 312 West 122nd Street.  (Tr. 258.)  Harrell intended to look at the boiler in the basement of 312 with Hayes.  (Trial Tr. 258.)  As Harrell approached 122nd Street and Manhattan Avenue, he saw the petitioner and a group of about five other men walking towards him.  (Tr. 259.)  As he passed by the group, he heard someone in the crowd say either, "do you think he is dead" or "did you kill him" or "something of that nature."  (Tr. 260.)  He was not sure who in the group said those words.  (Tr. 260.)  Harrell also heard the petitioner say "Go back and check, go back and make sure the door is locked to the club."  (Tr. 260.)  Harrell testified that the group was "walking pretty swiftly" and that he just passed by them on the street.  (Tr. 261.)  After Harrell walked past the petitioner and his group, he turned the corner onto 122nd Street and saw a

crowd of people in front of apartment building 312.  (Tr. 265.)
He heard someone in the crowd say that "Kenny has been shot."
(Tr. 266.)  Police cars and an ambulance arrived at the scene
shortly after.  (Tr. 266.)

II.

Pursuant to the Antiterrorism and Effective Death Penalty
Act of 1996 ("AEDPA"), a federal court may grant habeas corpus
relief to a state prisoner on a claim that was adjudicated on
the merits in state court only if it concludes that the state
court's decision "was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined
by the Supreme Court of the United States" or "was based on an
unreasonable determination of the facts in light of the evidence
presented in the State court proceeding."  28 U.S.C.
§ 2254(d)(1)-(2); see also Hawkins v. Costello, 460 F.3d 238,
242 (2d Cir. 2006).

A state court decision is contrary to clearly established
Federal law "if the state court arrives at a conclusion opposite
to that reached by [the Supreme Court] on a question of law" or
"if the state court confronts facts that are materially
indistinguishable from a relevant Supreme Court precedent and
arrives at a result opposite to" the Supreme Court's result.
Williams v. Taylor, 529 U.S. 362, 405 (2000).

A state court decision involves "an unreasonable application of . . . clearly established Federal law" when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case . . . ." Jones v. Walsh, No. 06 Civ. 225, 2007 WL 4563443, at *5 (S.D.N.Y. Dec. 27, 2007) (quoting Williams, 529 U.S. at 407-08). To meet that standard, "the state court decision [must] be more than incorrect or erroneous . . . [it] must be objectively unreasonable." Jones, 2007 WL 4563443 at *5 (quoting Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). "[I]t is well established in [this] circuit that the objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003) (internal quotation marks omitted).

Because the petitioner is proceeding pro se, his petition is "read liberally and should be interpreted 'to raise the strongest arguments that [it] suggest[s].'" Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)); see also Muir v. New York, No. 07 Civ. 7573, 2010 WL 2144250, at *3-*4 (S.D.N.Y. May 26, 2010).

III.

The petitioner's first claim is that the trial judge's failure to give the jury an alibi instruction constituted reversible error.  As an initial matter, the petitioner's claim is procedurally barred because his trial counsel did not object to the jury instruction, and the Appellate Division rejected the petitioner's claim as unpreserved and declined to review it in the interest of justice.  People v. Sookoo, 856 N.Y.S.2d 105, 106 (App. Div. 2008).

It is well settled that where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Muir, 2010 WL 2144250, at *6.  The petitioner has failed to show cause or prejudice.

The second exception to the independent and adequate state grounds doctrine provides that a petitioner may obtain relief if he shows that a "fundamental miscarriage of justice" will result from failure to review his claim.  See Muir, 2010 WL 2144250, at

8

*8.  Here, the petitioner's case is not "an extraordinary case,
where a constitutional violation has probably resulted in
the conviction of one who is actually innocent . . . ." Murray
v. Carrier, 477 U.S. 478, 495-96 (1986).

Even if his claim was not barred, it does not entitle the
petitioner to habeas relief in this Court.  "In order to obtain
a writ of habeas corpus in federal court on the ground of error
in a state court's instructions to the jury on matters of state
law, the petitioner must show not only that the instruction
misstated state law but also that the error violated a right
guaranteed to him by federal law." Sams v. Walker, 18 F.3d 167,
171 (2d Cir. 1994) (citing Cupp v. Naughten, 414 U.S. 141, 146-
47 (1973)).  An error in a state court jury instruction can be a
basis for habeas relief only if "the ailing instruction by
itself so infected the entire trial that the resulting
conviction violates due process." Cupp, 414 U.S. at 147; see
also Henderson v. Kibbe, 431 U.S. 145, 155 (1977); United States
ex rel. Smith v. Jochannananye, 505 F.2d 1355, 1359 (2d Cir.
1974); Pinkney v. Senkowski, No. 03 Civ. 4820, 2006 WL 3208595,
at *7 (S.D.N.Y. Nov. 3, 2006).

At trial, the petitioner testified that he left the club
and went to a restaurant with his girlfriend before Hayes was
shot, and that when he and his girlfriend returned to the club,
Hayes had already been shot.  (Tr. 459-463.)  The petitioner's

testimony constituted an alibi, and under New York law, the petitioner would have been entitled to a jury instruction that the State bore the burden of disproving his alibi.  See People v. Holt, 492 N.E.2d 769, 770 (N.Y. 1986).  However, under New York law, the failure to provide an alibi instruction does not require reversal if "the charge as a whole conveyed the necessary information regarding the People's burden of proof." People v. Warren, 559 N.E.2d 648, 649 (N.Y. 1990); see also Pinero v. Greiner, 519 F. Supp.2d 360, 369 (S.D.N.Y. 2007).

Here, the trial judge's jury instructions clearly "conveyed the necessary information regarding the People's burden of proof."  Warren, 559 N.E.2d at 649.  In the jury charge, the judge stated, "even if you were to disregard the defendant's testimony in its entirety, the People nonetheless have the burden of establishing his guilt beyond a reasonable doubt." (Tr. 666.)  The judge thoroughly instructed the jury on the presumption of innocence and the prosecution's burden to prove the defendant's guilt beyond a reasonable doubt.  The judge explained: "[t]his burden remains on the prosecution throughout the trial.  It never shifts to the defendant.  No defendant is required to prove his innocence.  The burden is on the prosecution to prove each element of the crime submitted to you, beyond a reasonable doubt."  (Tr. 668.)

Here, the petitioner's trial counsel did not request an alibi charge, nor did trial counsel object to the charge that was given.  "It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." Wright v. Smith, 569 F.2d 1188, 1192 (2d Cir. 1978) (quoting Henderson, 431 U.S. at 154 (1977)).  Because the trial judge clearly stated that the burden of proof remained with the State at all times, the trial judge's jury instructions satisfied the requirements of New York law.  The instructions also did not violate any right guaranteed to the petitioner by federal law, as required in order for his habeas claim to succeed.  For the foregoing reasons, the petitioner's alibi instruction claim is without merit.

IV.

The petitioner's second claim is that the failure to give a "one witness identification charge" was error.  As an initial matter, this claim is also barred because the petitioner's counsel did not object to the jury charge at trial, and the Appellate Division declined to review the claim because it was unpreserved.  This constitutes an "independent and adequate" state procedural bar.  See Rodriguez v. Schriver, 392 F.3d 505, 510 (2d Cir. 2004).  The claim may only be reviewed by a federal court if the petitioner can show cause for failure to raise the

claim and prejudice that would result from failure to review the claim, or that a "fundamental miscarriage of justice" will result from failure to review the claim now.  <u>Coleman</u>, 501 U.S. at 750.  The petitioner cannot show cause and prejudice for the default.  Because the claim lacks merit, failure to review it now will not constitute a fundamental miscarriage of justice.

This claim must also be rejected because it is solely a matter of state law and is therefore not a basis for habeas relief.  In any event, the claim is without merit.  "The [New York] Court of Appeals repeatedly has held that while an expanded identification charge is the better practice when identification is an issue in a case, so long as the trial court provided an instruction containing 'a correct statement of the law which sufficiently apprised the jury that the reasonable doubt standard applied to identification,' the instruction is legally sufficient."  <u>People v. Barton</u>, 752 N.Y.S.2d 174, 175-76 (App. Div. 2003) (quoting <u>People v. Knight</u>, 662 N.E.2d 256, 257 (N.Y. 1995)).  A more detailed charge should be given when identification is in controversy.  <u>See</u> <u>People v. Rodriquez</u>, 402 N.Y.S.2d 843, 844-45 (App. Div. 1978).

"Out of a sense of fairness, attention should also be drawn to the possible unreliability of identification testimony," but a "[j]udge who gives a general instruction on weighing witnesses' credibility and who states that identification must

be proven beyond a reasonable doubt has made an accurate statement of the law."  People v. Whalen, 451 N.E.2d 212, 214-15 (N.Y. 1983).

Here, the trial judge clearly gave a reasonable jury instruction.  The judge told the jury to "[c]onsider the reasonableness or unreasonableness of the testimony . . . whether the testimony is supported or contradicted by other evidence, whether the witness has an interest or lack of interest in the outcome of the case . . . ."  (Tr. 663.)  The jury was told "it is your duty to evaluate testimony. You have to sort out the credible testimony and disregard testimony which you find not credible.  One of your chief functions as a judge of the facts is to determine witness credibility . . . .  You, and you alone have the power to say that a witness is or is not truthful . . . ."  (Tr. 662.)  Specifically speaking about Ross, the judge instructed, "You've heard evidence that the witness William Ross was previously convicted of various crimes . . . whenever you hear a witness testify, you must decide whether and to what extent you believe that person."  (Tr. 665.) Ultimately, the jury was instructed that they were "the sole judges of the facts," that they must "determine which of the witnesses [they] believe [and] what portion of [the witnesses'] testimony [they] accept and what weight [to] give it."  (Tr. 667.)

Here, the judge's instruction to the jury was acceptable. Because Ross lived in the same building as the petitioner and had seen him before on numerous occasions, there was no "close question of identity" regarding Ross' familiarity with and ability to identify the petitioner; therefore, a more detailed charge was not warranted.  See Whalen, 451 N.E.2d at 214.  For the foregoing reasons, the petitioner's second claim is denied.

V.

The petitioner's third claim is that the admission of testimony by the former ADA and the police about prior consistent statements from Ross was error.  This claim is also procedurally barred because the petitioner's trial counsel did not make an objection at trial.  Additionally, there is no showing of cause and prejudice.  Because the claim is without merit, failure to review it now will not constitute a fundamental miscarriage of justice.  The claim is also not cognizable on a habeas corpus petition because it is solely a question of state law, and is, in any event, without merit.

The claim lacks merit because the prior consistent statements were properly admitted under New York evidentiary law.  Where the defense raises an inference that a witness' testimony is the product of recent fabrication, prior consistent statements are admissible to rebut that implication or charge. See People v. Buie, 658 N.E.2d 192, 197 (N.Y. 1995).

14

Here, part of the defense strategy was to discredit Ross's trial testimony by pointing out the benefits that Ross had already gained and hoped to gain in the future from his cooperation with the police.  Defense counsel asserted that Ross, who was selling drugs at the time he came to police, was "try[ing] to get some assurance [sic] to protect himself in case he got arrested" (Tr. 591), and that Ross "need[ed] to bring in a good result for the People on this case so that the People [would] help him get an earlier parole."  (Tr. 576.)  Based on defense counsel's repeated suggestions that Ross had fabricated his testimony, the State was entitled to introduce evidence that Ross had made earlier statements consistent with his trial testimony before the motives which may have induced him to fabricate that testimony existed.  Therefore, the petitioner's third claim is without merit.

                                VI.

Finally, the petitioner claims that his trial counsel was ineffective.  Because the petitioner did not raise his ineffective assistance of counsel claim in a motion to vacate his judgment pursuant to New York Criminal Procedure Law section 440.10, "which [would have] permit[ed] 'evidentiary exploration' of matters both on and off the record" and is "the preferred avenue for inadequate representation claims in New York," the petitioner did not give the state courts a fair opportunity to

pass upon the claim he now asserts; therefore, it is unexhausted and cannot serve as the basis for habeas relief.  See Caballero v. Keane, 42 F.3d 738, 740 (2d Cir. 1994); see also Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982).  Thus, the Appellate Division determined that the petitioner's ineffective assistance of counsel claims were "unreviewable on direct appeal because they involve matters outside the record regarding counsel's strategy."  Sookoo, 856 N.Y.S.2d at 106.  To the extent that the existing record permitted review of the petitioner's claims, the Appellate Division found that the "defendant received effective assistance under the state and federal standards.  Under the circumstances of the case, defendant was not prejudiced by the fact that his attorney did not request an alibi charge or an expanded identification charge."  Sookoo, 856 N.Y.S.2d at 106.

An unexhausted claim cannot be the basis for habeas relief, and may result in the petition being dismissed without prejudice as a mixed petition based on the failure to exhaust state remedies.  See Coleman, 501 U.S. at 731; Rose v. Lundry, 455 U.S. 509, 522 (1982).  However, while an unexhausted claim cannot be the basis for relief, it can be denied on the merits. See 28 U.S.C. § 2254(b)(2).  In this case, the petitioner has failed to raise a meritorious claim of ineffective assistance of counsel and the claim should therefore be denied.

16

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  Strickland v. Washington, 466 U.S. 668, 687 (1984).

For the reasons discussed above, each of the claims that the petitioner claims should have been raised by his counsel at trial are without merit, and therefore the petitioner cannot show that his trial counsel's performance was deficient and resulted in prejudice to the petitioner.

In his reply brief, the petitioner asserts that the actual error committed by his trial counsel was the failure to object to James Harrell's testimony that he heard someone in the crowd of people walking with the petitioner on the night of the murder say something to the effect of, "Do you think he is dead," or,

17

"Did you kill him." (Tr. 277.) The petitioner claims that these statements testified to by Harrell were hearsay and that admitting them violated Confrontation Clause rights under the Sixth Amendment. However, the statements were not hearsay because they were not admitted for the truth of what was said. The statements did not contain any truthful comment, and to the extent that they did, there is no dispute that Hayes was killed. Moreover, there was no violation of the Confrontation Clause. The Confrontation Clause bars the admission of "testimonial" statements unless the witness is unavailable and the defendant has a prior opportunity for cross-examination. Crawford v. Washington, 541 U.S. 36, 68 (2004). Although the Supreme Court has not provided a comprehensive definition of "testimonial" statements, it is plain that the conversation reported by Harrell – statements made by participants in a group on the street with no participation or prompting by any state actors – could not conceivably be testimonial. See Michigan v. Bryant, 131 S.Ct. 1143, 1152-55 (2011) (explaining "testimonial" statements).

Defense counsel's failure to object to the statement was also not a basis for relief because it was plainly trial strategy. See Strickland, 466 U.S. at 689 (in challenging the effectiveness of counsel, "the defendant must overcome the presumption that, under the circumstances, the challenged action

18

'might be considered sound trial strategy.'") (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).  Defense counsel, after asking about the statement, tried to impeach Harrell with his grand jury testimony and tried to get Harrell to testify that the petitioner had made this statement.  If true, this would have been exculpatory and suggested that someone else had shot Hayes.  It cannot be said that use of the statement, which was not excludable, constituted ineffective assistance of counsel.


CONCLUSION

For the foregoing reasons, the petition for habeas corpus is denied.  Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).  The Clerk is directed to enter judgment dismissing the petition and closing this case.

SO ORDERED.

Dated:    New York, New York
          April 20, 2011

                                    John G. Koeltl
                              United States District Judge